IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ALBERT C. HANNA, | ) ) ) | |
| Plaintiff, | ) ) | No. 11-cv-04885 |
| v. | ) ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Relator Albert Hanna has brought the present action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, which permits private *qui tam* relators to recover from persons who make false or fraudulent claims for payment to the United States. Hanna claims that Defendant City of Chicago ("the City") received federal funds from the United States Department of Housing and Urban Development ("HUD") and that, to receive those funds, the City was required to certify its compliance with federal fair housing laws. According to Hanna, the City violated the FCA by falsely certifying that it was taking affirmative steps to further fair housing as required by law when, in fact, it was using its housing programs and ordinances to preserve and exacerbate housing segregation. Before the Court is the City's motion to dismiss Hanna's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 55.) For the reasons detailed below, the City's motion is granted.

## BACKGROUND

Hanna's original complaint in this case was dismissed without prejudice for failure to state a claim. (Dkt. No. 49.) He has now filed the First Amended Complaint, which seeks relief from the City under §§ 3729(a)(1)(A) and 3729(a)(1)(B) of the FCA. Those provisions impose

liability on persons who knowingly present a false or fraudulent claim for payment by the United States or knowingly make a false record or statement material to a false claim submitted to the United States. *See* 31 U.S.C. §§ 3729(a)(1)(A), (B).

In his First Amended Complaint, Hanna alleges that as a condition of receiving HUD funds, the City was required to certify to HUD its compliance with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, and their implementing regulations. (Am. Compl. ¶¶ 20-22, Dkt. No. 54.) Those provisions required the City to "affirmatively further fair housing." (*Id.* ¶ 22.) According to Hanna, this obligation required the City to conduct a comprehensive review of its laws, regulations, and administrative policies and practices, and to assess their impact on fair housing. (*Id.* ¶ 23.) He claims that the duty also required the City to submit to HUD a periodic "Consolidated Plan" that described its housing market. (*Id.* ¶ 63.) Hanna further alleges the City submitted its certifications on an annual basis and submitted five-year Consolidated Plans in 2004 and 2010. (*Id.* ¶¶ 64, 68.) The certifications of compliance were false, however, and the Consolidated Plans concealed the extent of the City's housing segregation. (*Id.* ¶¶ 69, 70.) Hanna claims that the City knew which of its neighborhoods were disproportionately populated by poor and minority residents; yet despite this knowledge, the City's housing programs, zoning, and land use laws intentionally directed affordable housing development to those areas. (Id. ¶¶ 24, 26-27.)

One of the means by which the City allegedly directs this development is through aldermanic privilege. Hanna contends that each Chicago alderman effectively controls zoning, land use, and permit approval within his ward. (*Id.* ¶¶ 41, 42, 46.) He claims that aldermen in non-minority areas have used this prerogative to reduce the number of affordable multifamily

rental developments. (*Id.* ¶¶ 43, 47.) He further alleges that the frequent designation of landmark status in such areas has had the same purpose and effect. (*Id.* ¶¶ 53, 57-60.)

Hanna concludes that the City knew it had failed to adopt programs to undo segregation; that its actions, including the manner of its spending of federal housing funds, instead exacerbated segregation; and that its representations of compliance with its obligations under federal law were therefore false. (*Id.* ¶¶ 69, 75-79.) His allegations extend across the six-year period prior to the July 2011 filing of his original complaint. (*Id.* ¶ 1.)

## DISCUSSION

Claim under the FCA are governed by Federal Rule of Civil Procedure 9(b), which requires a complaint to state with particularity the circumstances constituting the alleged falsehood. *U.S. ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 376 (7th Cir. 2003). Rule 9(b)'s "particularity" demand ordinarily requires a complaint to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated, or, "in other words, the plaintiff must plead the 'who, what, when, and where' of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992). The exact degree of specificity required will differ based on the facts of each case. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). To be liable under the FCA, a defendant must have actual knowledge of the falsity of the information presented or deliberately ignore or act in reckless disregard of its truth or falsity. *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544 (7th Cir. 1999).

Here, Hanna claims that the City's knowing falsehoods consisted of statements that the City was in compliance with its statutory obligations to further fair housing. The provisions he cites as imposing those obligations explicitly require forward-looking commitments that the

recipient "will" further fair housing. *See, e.g.*, 42 U.S.C § 5304(b)(2) (grantee "will" conform to Civil Rights Act of 1964 and the Fair Housing Act, and affirmatively further fair housing); 42 U.S.C. § 12705(b)(15) (grantee "shall" certify that it "will" affirmatively further fair housing); 42 U.S.C. § 3608(e)(5) (HUD Secretary "shall" administer programs affirmatively to further fair housing policies). But unless the defendant intends at the time of the commitment not to perform, subsequent nonperformance of a future commitment is not a falsehood for FCA purposes. *U.S. v. Sanford-Brown, Ltd.,* 788 F.3d 696, 710-11 (7th Cir. 2015); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) ("Simple breach of contract is not fraud, but making a promise while planning not to keep it *is* fraud.") (emphasis in original). An honest statement of intentions at the time of the commitment followed by a change of heart, even if the change is motivated by less than admirable motives, is not actionable under the statute. *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014).

Accordingly, the City's representations that it would further fair housing and otherwise act in accordance with its statutory obligations as a recipient of federal housing funds are not actionable under the FCA unless the makers of those representations knew at the time that the City did not intend to live up to them. In the absence of a link between the representation and the intention not to abide by it, there cannot be a knowingly false claim. *U.S. ex rel. Hill v. City of Chicago*, 772 F.3d 455, 456 (7th Cir. 2014).

Hanna's First Amended Complaint does not provide sufficient information to raise an inference that the required link was present. He identifies the persons certifying statutory compliance only as "the City's Mayor (or his designee)," without any attempt to further specify the individuals who filled those roles during the six-year period covered by his allegations. (First Am. Compl. ¶ 68, Dkt. No. 54.) With regard to the intention not to comply with the City's

statutory obligations, Hanna makes no effort to identify individuals who held that animus. In fact, Hanna's First Amended Complaint denies any centralized plan, going so far as to state: "In the City of Chicago there is no comprehensive plan to guide overall zoning policy. Instead, zoning within each ward is controlled by the Alderman of that ward." (*Id.* ¶ 39.) Hanna does not describe the aldermen as agents of any specific plan to avoid statutory compliance; rather, he alleges that they "are highly responsive to organized neighborhood groups" and that they "typically respond to political pressure from individuals or community organizations when making decisions regarding zoning." (*Id.* ¶¶ 46, 47.)

The requirement to plead fraud with particularity "includes pleading facts that make the allegation of fraud plausible." *Grenadyor*, 772 F.3d at 1106. In the present case, Hanna's First Amended Complaint attributes allegedly false certifications to an unspecified number of individuals over a six-year period, makes no effort to link those individuals to any intent to disregard those certifications, and alleges facts suggesting that any failure to live up to the obligations of the certifications are attributable to a broadly dispersed number of actors in the political process. While Hanna plausibly alleges that the City has failed to eliminate housing segregation, he does not make a plausible claim that any specific fair housing commitment was knowingly dishonest rather than merely ineffective. Accordingly, his *qui tam* complaint fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss is granted. Because Hanna previously was granted an opportunity to address the pleading deficiencies of his complaint and failed to do so, this action is dismissed with prejudice. *Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1020-21 (7th Cir. 1992).

ENTERED:

Date: September 16, 2015

Andrea R. Wood
United States District Judge